B. L. MORGAN and NELLANNE SUE MORGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; B. L. MORGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Morgan v. Commissioner
Docket Nos. 3174-78, 3254-78.[1]
United States Tax Court
T.C. Memo 1980-82; 1980 Tax Ct. Memo LEXIS 500; 39 T.C.M. (CCH) 1263; T.C.M. (RIA) 80082; March 20, 1980, Filed B. L. Morgan, pro se. F. Michael Kovach, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' income tax: Year
Deficiency
1974
$1,821.48
1975
1,015.30
The issues presented *501 are: 1. Whether B. L. Morgan incurred and paid living and transportation expenses while away from home overnight (section 162(a)(2)) [2] or in connection with his employment (section 162(a)) during 1974 and 1975. 2. Whether B. L. Morgan incurred and paid expenses during 1974 and 1975 while engaged in the activity of snow removal for profit. 3. Whether B. L. Morgan incurred and paid home-office expenses in 1975 which were ordinary and necessary in the production of income. FINDINGS OF FACT B. L. Morgan (hereafter "petitioner") resided in Port Huron, Michigan, when he filed his petitions in these cases. Petitioner filed a joint return for 1974 with his them wife, Clara M. Morgan (now Day). He filed a joint return for 1975 with his wife Nellanne Sue Morgan. Petitioner is a pipefitter. In 1969 he established his home in Nicholasville, Kentucky, where his then wife Clara and his children lived. Petitioner was considered a resident of Kentucky for purposes of a divorce proceeding in 1974, which culminated in his divorce from Clara in January 1975. Until *502 his divorce, petitioner paid property taxes and other expenses for his wife and children in Kentucky. He also made visits to Kentucky during 1974 to see his children. On such occasions, Clara moved out of the house. In April 1972 petitioner moved to Port Huron, Michigan. At first he lived in a motel, later in a room in a private house, and in 1975 when he married Nellanne Sue Morgan he moved into a house with her and three stepchildren. Petitioner, a pipefitter, obtained his employment out of his union hall in Odessa, Texas, which referred him to the local union in Detroit. Petitioner worked for the Lummus Company at Marysville, Michigan, from April 1972 to May 1973 (13 months). He worked for Fishbach & Moore at Marysville from May 1973 to February 1974 (9 months). He worked for Bechtel Construction Company at Avoca, Michigan, from February 1974 to November 1974 (9 months). He was out of work from November 1974 to April 1975 (5 months). He worked for Lorne Construction Company at Detroit from April 1975 to December 1975 (8 months). From December 1975 to January 1976, he worked in Marysville. From April to May 1976 he worked for Maintenance Engineers in Croswell, Michigan. *503 During all of his employment, petitioner commuted from Port Huron to work. Marysville is 12 miles from Port Huron, Avoca is 20 miles, Detroit is 62 miles and Croswell is 25 to 30 miles from Port Huron. On his 1974 joint income tax return, petitioner claimed employee away from home expenses of $4,816 for meals and lodging and $1,290 for automobile expenses (8,600 miles at 15 a mile). On his 1975 return, petitioner claimed a deduction of $3,051.50 for employee away from expenses ($2,825 mileage expense [3] plus $226.50 parking fees and tolls). In November 1974 petitioner purchased a snowblade and hydraulic lift for his one-ton truck. He had it installed and ready for use by December. However, by then most of the snow removal business had been contracted to others. Petitioner unsuccessfully contacted banks and other businesses in an effort to get their snow removal business in 1974. On his 1974 return he claimed the following deductions in connection with his snow removal activities: Supplies & perishable tools--repairs
$ 344
Advertising
9
Miscellaneous expenses
50
Insurance
85
Total
$ 488
*504 He reported no income from the snow removal activities in 1974. On his 1975 return, petitioner claimed $35 gross income from snow removal activities and the following expenses: Repairs and maintenance
$ 255.00
Depreciation
109.00
Insurance
35.00
Gas
17.50
License
15.00
Total
$ 431.50
On his 1975 joint income tax return, petitioner claimed a deduction of $659 for home-office expenses. The office was one room, 12 feet by 14 feet, of a seven room house in which petitioner lived with his wife and three stepchildren. The office contained a desk, a telephone and petitioner's records of his stock transactions. The children occasionally used this room to make telephone calls. Petitioner purchased numerous stocks between August 1974 and May 1975 which he sold during 1975. He reported short-term capital gains of $9,986.68 and long-term capital gains of $2,344.13 from his stock transactions on his 1975 joint return. Petitioner claimed a home-office expense deduction consisting of expenses for stock market publications, office supplies, and telephone, plus a portion of household expenses allocated on a square foot basis. OPINION The first issue is whether *505 petitioner incurred living and transportation expenses while away from home (section 162(a)(2)) or in connection with his employment (section 162(a)) in 1974 and 1975. This, in turn, depends on where his tax home was during those years. Petitioner concedes that his tax home was Port Huron in 1975 where he lived with his wife Nellanne Sue Morgan and his three stepchildren. He claims that his tax home in 1974 was in Nicholasville, Kentucky where his then wife Clara M. Morgan (now Day) and children lived. Petitioner moved to Port Huron in April 1972 living first in a motel and then in a room in a private house where he lived until he married Nellanne Sue Morgan in 1975. From April 1972 until at least May 1976, petitioner held a series of jobs as a pipefitter with various companies in Marysville, Avoca, Detroit and Croswell, all towns in Michigan within commuting distance of Port Huron. These jobs were obtained through petitioner's union. At no time during this period is there any evidence that petitioner sought employment other than in the Port Huron area. While none of petitioner's jobs were permanent (they seldom are in the construction business), they were primarily of many *506 months' duration and there is no evidence they were temporary rather than indefinite. During 1974 petitioner returned to Kentucky only to see his children. While he visited with his children his wife did not stay in the house in Nicholasville. During 1974 petitioner's wife started divorce proceedings against him in Kentucky which culminated in a divorce decree in January 1975. The evidence in this case taken as a whole supports respondent's determination that petitioner's tax home in 1974 was Port Huron, Michigan, and not Nicholasville, Kentucky, whether his employment during the year is considered indefinite or temporary. Having concluded that petitioner's home was Port Huron, it follows that petitioner was not away from home since he daily commuted to work in Port Huron during 1974 and 1975. Moreover, petitioner has not shown that the transportation expenses claimed on his return were other than nondeductible commuting expenses. Moreover, petitioner has made no attempt to comply with the substantiation requirements of section 274. The next issue is whether petitioner was engaged in the activity of snow removal for profit in 1974 and 1975. In November 1974 petitioner *507 purchased a snowblade and hydraulic lift for his one-ton truck which was installed and ready for use in December 1974. However, by then nearly all the snow removal business appears to have been contracted out and petitioner was generally unsuccessful in getting any such business. He did earn $35 during the winter of 1974-1975 which he reported on his 1975 return. That was the only winter he was engaged in the snow removal business. He claimed expenses of $488 on his 1974 return and $431.50 on his 1975 return in connection with this activity, $9 of which was for advertising in 1974. The rest of the expenses were for repairs, insurance, gas, license and the like. Petitioner has not explained how he could have incurred repairs of $344 in December 1974 and $255 in early 1975 for his snowblade and lift while he earned only $35. His gas for early 1975 was allegedly half his earnings. Petitioner did not substantiate any of his claimed expenses. On the basis of the record, petitioner has failed to carry his burden of proof and respondent's disallowance of the expenses in connection with his snow removal activity in 1974 and 1975 is sustained. The next issue is whether petitioner *508 is entitled to a home-office deduction in 1975. The deduction was for one room (12 feet by 14 feet) in petitioner's seven room house which contained a desk, a telephone and petitioner's stock transaction records. Petitioner sold numerous stocks during 1975 which he had purchased in 1974 and 1975. He reported short-term capital gain of $9,986.68 and long-term capital gain of $2,344.13 from his stock sales in 1975. Petitioner's testimony was that in 1975 he "dealt in the stock market trying to make some extra income that way," that he "made about $13,000 off the stock market" which he reported on his 1975 return, that he claimed "$649" (actually $659) home-office expense which "included my stock advisories and office supplies" and that it seems "unreasonable" that respondent would disallow the "$649, or whatever it is, expenses on $11,000 or $13,000 income." Asked how he calculated the home-office expense, he replied: "I had it done by the tax preparer, you know. I think they * * * figured it * * * by the square feet and then, of course, added the cost of the publications and the office supplies in on it. I believe maybe there was some allowance for telephone." We are not given *509 any specifics. The only other use the home-office got was when one of petitioner's stepchildren used the telephone in that room. Petitioner was active in the stock market in 1975 as his return indicates. He had no other office. He relied on stock market publications, used the telephone and other supplies and used one room in his house in connection with this activity. He made a substantial profit on his activity in 1975, which he reported. Petitioner, who is pro se, and presented what evidence he did only under the prodding questions of this Court, was less than precise but credible. Under the circumstances, we allow petitioner $400 for publications, telephone, office supplies and home-office expense in connection with his investment activities in 1975. [4]
Decision will be entered under Rule 155.
Footnotes
1. These cases have been consolidated for purposes of trial, briefing and opinion.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
3. This represents 15,000 miles at 15 a mile and 5,750 miles at 10 a mile.↩
4. For taxable years beginning after December 31, 1975, see section 280A, Disallowance of Certain Expenses in Connection with Business use of Home, Rental of Vacation Homes, etc., was added by P.L. 94-455, 90 Stat. 1569.↩